IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK J. WASICKANIN, | : | CIVIL ACTION NO. **1:CV-06-1615** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

### REPORT AND RECOMMENDATION

        This is a Social Security disability case pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

The Plaintiff, Mark J. Wasickanin, is seeking review of the decision of the Commissioner of Social

Security ("Commissioner")[1] which denied his  claim for Disability Insurance Benefits ("DIB") under

Title II  of the Social Security Act (Act), 42 U.S.C. §§ 401-433.

## I.  PROCEDURAL HISTORY.

        The Plaintiff protectively filed an application for DIB  on January 29, 2004, alleging an

inability to work since June 29, 2001, due to back injury and neck injury suffered in an October

16, 1995 work injury (while Plaintiff was lifting a heavy piece of sheet metal).  (R. 11, 14, 41, 43,

63).  Plaintiff indicated that, due to his  back and neck injuries his ability to work was limited with

respect to  "bending,  sitting, standing  for extended time  sever (sic) headaches constant pain in

---

        [1]We agree with Defendant (Doc. 10, p. 1, n. 1)  that since a new Commissioner has
succeeded Jo Anne Barnhart Acting Commissioner, the new Commissioner is automatically
substituted as the Defendant herein.  *See* Fed. R. Civ. P. 25(d)(1).  However, the new
Commissioner is Michael J. Astrue, and he replaced Acting Commissioner Linda McMahon.

back, numbness in fingers." (R. 63).[2]  His claim was denied initially on August 2, 2004 (R. 11),  and

a timely request for a hearing was filed.  A hearing was conducted before an Administrative Law

Judge ("ALJ") on February 13, 2006.  Plaintiff testified at his hearing, as did a vocational expert

("VE"), Carmine Abraham.  Plaintiff was denied benefits pursuant to the ALJ's decision of April 7,

2006. (R. 11-19).

    The Plaintiff requested review of the ALJ's decision by the Appeals Council.  Said request

for review was denied on June 23, 2006 (R. 4-6), thereby making the ALJ's decision the "final

decision" of the Commissioner.  42 U.S.C. § 405(g).  That decision is the subject of this appeal.

    In compliance with the Procedural Order issued in this matter, the parties have filed

briefs in support of their respective positions.  (Docs. 9 & 10).

## II. STANDARD OF REVIEW.

    When reviewing the denial of DIB, we must determine whether the denial is supported

by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*,

994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*,

181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than

a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The parties agree on the stated

standard of review.  (Doc. 5, p. 4 & Doc. 6, pp. 1-2).

---

[2]There is no dispute that the Plaintiff meets the nondisability requirements for DIB
benefits and is insured for benefits through December 31, 2008. (R. 11, 13, ¶ 1.). (Doc. 9, p. 2).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (1990). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that he has not engaged in "substantial gainful activity." *See* C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or

combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that he is unable to perform his past relevant work. *See* 20 C.F.R. § 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to his past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 19). In reaching this determination, the ALJ first found that Plaintiff had not engaged in substantial gainful work activity since his alleged onset date, June 29, 2001. (R. 13, ¶ 2.). Further, the ALJ determined that the medical evidence establishes that Plaintiff has degenerative disc disease of the thoracic, cervical and lumbar spines, and status post cervical spine discectomy and fusion. The ALJ found that Plaintiff's impairments were, in combination, severe within the meaning of the Regulations, but not severe enough to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (R. 13-14, ¶'s 3-4).

The ALJ noted that Plaintiff's testimony was not entirely credible based on the objective medical record, to the extent that he claimed limitations concerning the intensity, duration and limiting effects of his symptoms caused by his impairments.  (R. 16).  This finding is Plaintiff's first claim that the ALJ erred.  (Doc. 9, p. 6).

When assessing his residual functional capacity ("RFC"), the ALJ found that Plaintiff retains the following residual functional capacity: to perform medium work with occasional climbing, balancing, stooping, kneeling, crouching and crawling, and limited bilateral overhead reaching. (R. 14, ¶ 5.).   This RFC finding is Plaintiff's second claim that the ALJ erred. (Doc. 9, p. 6).  The ALJ also found that since Plaintiff was limited to a reduced range of medium work, he could not perform his past relevant work as a machine operator.  (R. 18, ¶ 6.).  Thus, the ALJ found that the Plaintiff met his burden in Step Four, and the inquiry moved to Step Five.

As discussed above, at Step Five, the Commissioner had the burden of demonstrating that the Plaintiff is capable of performing other jobs existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(f), 416.920(f). The final and fifth step requires an analysis of whether the Plaintiff, based on his age, experience, education, and residual functional capacity and limitations, can perform any other work in the national economy.  *See Plummer v. Apfel*, 186 F.3d at 428; *Burnett v. Comm. of SSA*, 220 F.3d 112, 126 (3d Cir. 2000).  Thus, at this step, the Commissioner must demonstrate that the Plaintiff is capable of performing other available work in order to deny a claim of disability.  20 C.F.R. § 404.1520(f); *Plummer*, 186 F.3d at 428.  In making a disability determination, the ALJ must analyze the cumulative effect of all of the Plaintiff's impairments.  20 C.F.R. § 404.1523; *Plummer, supra*.  Based on the testimony of an impartial

vocational expert (VE Abraham), the Administrative Law Judge concluded that, considering the Plaintiff's age, educational background, work experience, and residual functional capacity, he is capable of making a successful adjustment to work which exists in significant numbers in the national economy. (R. 18-19).   Plaintiff was found to be capable of performing work as a hand packer, production worker, and store clerk.  (R. 18-19).  Thus, Plaintiff was found to be not disabled.  (R. 19).

The relevant time period for this case with respect to Plaintiff's DIB application is June 29, 2001 (the alleged onset disability date), through April 7, 2006  (date of ALJ's decision).  (R. 19, ¶ 11.).

## IV.  DISCUSSION.

This appeal involves the denial of Plaintiff's application for DIB.  Plaintiff filed his application in January 2004, which was denied in April 2006, by the decision of an ALJ.  The general issue in this case is whether substantial evidence supports the Commissioner's decision that the Plaintiff was not disabled.  (R. 19).

While the ALJ found that the Plaintiff had severe combination of impairments, (R. 13, ¶ 3.), she determined that his impairments did not meet or medically equal a listed impairment. The ALJ, in finding that Plaintiff did not have an impairment that meets or medically equals a listed impairment, considered Listings § 1.02 and § 1.04, as well as § 11.00, *et seq.*   Essentially, the Plaintiff disputes the ALJ's finding that he was not disabled.  Specifically, the Plaintiff contends that the ALJ erred in finding that he was not entirely credible with respect to his testimony regarding his limitations and his symptoms of pain.  (Doc. 9, p. 6).  The Plaintiff further argues that the ALJ's RFC

finding that he could perform a reduced range of medium work with the stated limitations was erroneous. Plaintiff contends that his RFC is less than sedentary.  The Plaintiff finally contends that the ALJ failed to give proper weight to the opinions of his treating physicians, Dr. Janerich and Dr. Petterson. (*Id.*, pp. 6-7).

### A.  Background

The Plaintiff was born on April 18, 1964.  (R. 43, 363).  He was 41 years old at the time of the hearing before the ALJ on February 13, 2006.  Thus, Plaintiff is a younger person under the Regulations.  *See* 20 C.F.R. § 404.1563(c).  (R. 18, ¶ 7.).  He completed high school. (R. 18, ¶ 8., 363).  He had vocational training as a welder, and his past relevant work included machine operator.  (R. 18, ¶ 6., 363).  The Plaintiff alleges that he became disabled on June 29, 2001, because of back and neck injuries he initially sustained in an October 1995 work injury.  (R. 43, 63).  The ALJ found that the Plaintiff's combined impairments, degenerative disc disease of the thoracic, cervical and lumbar spines, and status post cervical spine discectomy and fusion, were severe. (R. 13-14).  However, the ALJ also found that the Plaintiff retained the residual functional capacity to engage in a reduced range of medium work activity.[3] (R. 14, ¶'s 5., 18, ¶ 6.).  Finding that the Plaintiff's RFC did not preclude him from performing a reduced range of medium work and based on the testimony of VE Abraham that there were significant number of jobs in the national

---

[3]Medium work is defined as follows:

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work.  20 C.F.R. § 404.1567(c).

economy which a person with Plaintiff's functional limitations and background could perform, the ALJ held that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 19).

### B. Medical Evidence

On appeal, Plaintiff asserts that the ALJ did not give proper weight to the opinions of his treating physicians, that the ALJ failed to properly determine his RFC, and that the ALJ did not give proper weight to his testimony regarding his limitations and symptoms of pain.

The medical evidence reveals that Plaintiff was involved in a work injury in October 1995 and that he suffered back, leg, neck, shoulder and arm pain.  Two years later Plaintiff had a cervical discectomy and fusion, and in December 1997, his neck was well healed.  Plaintiff later developed low back and leg pain, and he was diagnosed with cervical and lumbar radiculopathy. (R. 14).  Plaintiff had chronic changes of disc degeneration of his lumbar spine.

In February 2001, Plaintiff was diagnosed with chronic lumbar disc syndrome with myofascial pain syndrome.  (R. 235).  His prognosis was favorable but hindered by its chronic nature.  Plaintiff had physical therapy in August 2002 and August 2003.   An August 2002 MRI of Plaintiff's lumbar spine revealed:

> There is narrowing of the disc spaces at L1-2 and L5-S1,
> with a right paramedial and central shallow herniation at
> L5-S1 extending into the peridural fat with no mass effect
> upon any of the surrounding structures.  No new developments
> are otherwise demonstrated.

(R. 346).

An October 2002 MRI showed:

> 1.  Degeneration and minimal central and paracentral
> protrusion of the disc at D6/7 on the right side.
>
> 2.  Minimal extradural compression is also seen at D11/12
> on the right.
>
> 3.  No focal extrusion of the discs or spinal stenosis seen
> on this study.

(R. 343).

A February 13, 2003 MRI of Plaintiff's cervical spine showed small right paracentral disc herniation at C6-7.   However, Plaintiff had no canal stenosis and his spinal cord had normal morphology.  (R. 342).

A January 2004 MRI of Plaintiff's cervical spine showed right-sided disc herniation at C6-7.  Specifically, it was found:

> The cervical spinal cord is seen with normal size, shape and
> signal.  No intradural abnormality is seen.  The cervical vertebrae
> are normal in height and signal.  There is decreased height
> and signal to the C5-6 and C6-7 intervertebral spaces.  There is
> evidence of a right posterolateral disc herniation.  There seems
> to be no impression to the thecal sac, but the disc herniation extends
> somewhat into the right neuroforamen.  The other levels show
> no disc herniation or bulging annulus or neuroforaminal
> encroachment.

(R. 341).

In March 2004, one of Plaintiff's treating physicians, Dr. Janerich, advised him not to perform any work.  (R. 308-309).   In April 2004, Dr. Janerich found that Plaintiff had right-sided C5-6 radiculopathy.  (R. 306).  In May 2004, Dr. Janerich reported that Plaintiff remained in pain, and he recommended physical therapy and prescribed medications for pain, including narcotic

analgesic and muscle relaxants.  The doctor again advised Plaintiff not to work.  (R. 305).  On May

27, 2004, Dr. Janerich wrote a note for Plaintiff "No work until further notice."  (R. 355).  Dr.

Janerich reported in August 2004, that Plaintiff had chronic pain due to discogenic disease of the

cervicothoracic and thoracolumbar spine.  (R. 304).  Plaintiff reported some improvement with

physical therapy.  In December 2004, Dr. Janerich noted Plaintiff was incompletely improved to

40%.  (R. 303).  In March 2005, Dr. Janerich noted that Plaintiff felt 40% of normal, and that his

records from Thomas Jefferson showed he had a small disc herniation at C5-6, but surgery was not

recommended.  (R. 357).  Dr. Janerich's impression was:

> Impression:
> 1.      History of ML strain lumbar spine with lumbar disc disease.
> 2.      ML strain of the cervical spine with C5/6 disc herniation.

(R. 357).

Dr. Janerich last saw Plaintiff in this case in September 2005.  Dr. Janerich noted that

Plaintiff felt 50% of normal for both his neck and low back.  Dr. Janerich's impression was:

> Impression:
> 1.      History of ML strain lumbar spine with lumbar disc disease.
> 2.      ML strain cervical spine with cervical disc disease.

(R. 356).

In May 2004, Dr. Wolk performed an IME of Plaintiff with respect to his workers

compensation claim.  Dr. Wolk noted that Plaintiff's January 2004 MRI of his cervical spine showed

a central right protrusion at C6-7 with a previous fusion at C5-6.  (R. 291).  Dr. Wolk opined that

Plaintiff was capable of performing various jobs such as pizza delivery driver, hotel front desk clerk,

telemarketer, golf shop attendant and customer service representative.  (R. 292).

On February 16, 2006, Dr. Petterson stated in a brief letter as follows:

> Mark Wasickanin is unable to work due to work-related
> injuries to his neck and low back complicated by radiculopathy
> and fecal incontinence.

(R. 358).[4]

Dr. Sedor treated Plaintiff from September 1997 through September 1998.  (R. 112). He is a neurosurgeon and testified for Plaintiff's lawsuit against his former employer, Altec Industries.  (R. 109-165).

Plaintiff testified at the ALJ hearing that he was receiving workers compensation since June 2001 to the time of the hearing.  (R. 364-378).  Plaintiff stated that he goes to Dr. Clearfield for acupuncture once a week.  Plaintiff takes care of his grooming , bathing, dressing, and he cleans and gets the kids ready for school. He enjoys fishing and hunting.  (R. 367).  He goes shopping, he goes to church weekly, he reads, he watches TV, he can go up his five (5) front steps twice a day. (R. 368-369).  He can pick up a gallon of milk.  He cannot reach overhead.  He only sleeps 3-4 hours per night due to his lower back bothering him.  (R. 369-70).  He can sit for 10 minutes and stand 10 minutes.  He can wall one block.  He takes Lexapro for depression.  He takes Avinza and Prevacid and Scelaxin, as well as Hyrdrocordone.  (R. 371-72).[5]  Plaintiff stated that he also takes

---

[4]Plaintiff incorrectly states in his Brief that the date of Dr. Petterson's letter was "February 16, 2002."  (Doc. 9, p. 6).  The letter is dated three days after Plaintiff's ALJ hearing. The ALJ considered this letter, but since no supporting records were sent with it, the ALJ gave it little weight. (R. 17).

[5]The ALJ indicated that Plaintiff took antidepressants, but found his depression was not severe.  (R. 13).  Plaintiff argues in his Brief that the ALJ glossed over and did not consider the impact of his depression. (Doc. 9, p. 10).  However, as the ALJ indicated, the record did not

Vicodin and that his medications somewhat reduce his symptoms.  They upset his stomach and make him feel "goofy" and tired. (R. 372).

At the time of his ALJ hearing, Plaintiff had been wearing a surgical collar for about one year on and off, when his neck gets aggravated, on occasion a couple times a week, and often when he drives.  (R. 373).  Plaintiff has had physical therapy and acupuncture, as well as injections (3).  Plaintiff stated that he went to a lot of  physical therapy but it did not work, and the last time he went he blew (herniated) another disc.  (R. 375).  Plaintiff stated that he went for injections three times, but that they did not give him lasting relief from pain.  Plaintiff uses a heating pad and takes hot showers for his pain.   Plaintiff described his symptoms as follows:

> The back of the neck is hurting.  Up right in the back middle
> of the head I have a headache.  My lower back, low back into
> like the butt, going down to about the middle between my
> knee and my back, the back of the legs like it stops about
> right there.

(R. 374).

Plaintiff described his discomfort as sharp and steady.   Plaintiff stated that the acupuncture helps with his pain for a couple of days and gave him relief and made him more calm, but it goes away.  (R. 375).  Plaintiff stated that in addition to the back pain, lower back pain, and headaches, he also had neck pain.  He had a little numbness in his left hand.  He has difficulty with his range of motion in his head and back, from side to side and up and down.  (R. 376).  Plaintiff stated that he also had urinary problems and occasional incontinence.  Plaintiff did not state he had

---

indicate any physiological treatment of Plaintiff besides the medication Lexapro, and no counseling.  We agree with Defendant (Doc. 10, p. 7), that Dr. Janerich noted Plaintiff was feeling much better and he tried to stop the Lexapro.  (R. 304).

any fecal incontinence, contrary to Dr. Petterson's February 16, 2006 letter. (R. 358).  He stated that in 2004, his doctor since 1997 or 1998, Dr. Janerich, told him he could not work and that at the time of the hearing, he was still not released to work.  (R. 377).

The ALJ found that Plaintiff's physical impairments, degenerative disc disease of the thoracic, cervical and lumbar spines and status post cervical spine discectomy and fusion, were severe (R. 13-14), but that  they did not meet or equal any listed impairment.  The ALJ also found that the Plaintiff's severe impairments do not prevent him from performing a reduced range of medium work.  The Plaintiff contends, in part, that this finding is not supported by substantial evidence since the ALJ failed to give proper weight to his testimony, to the opinions of his treating doctors, and that the ALJ erred with respect to her RFC finding.  We agree with Defendant that the ALJ's  decision was supported by substantial evidence in light of the medical record as discussed above.

### D. Analysis

The Plaintiff contends that the ALJ erred in addressing  his  testimony regarding his limitations and symptoms of pain.  (Doc. , pp.6-7).  The Plaintiff further contends that the ALJ failed to give proper weight to the opinions of his treating physicians, Dr. Janerich and Dr. Petterson.   The Plaintiff finally argues that the ALJ's RFC finding was erroneous.  Thus, Plaintiff, in part, requests that the decision of the Commissioner denying his DIB be reversed because the ALJ failed to give appropriate weight to the opinions of his  attending physicians.  *See Mason v. Shalala*, 994 F. 2d 1058, 1067 (3d Cir. 1993).

The ALJ found that Plaintiff did have a severe combination of impairments, *i.e.* degenerative disc disease of the thoracic, cervical and lumbar spines and status post cervical spine discectomy and fusion, based on the requirements set forth at 20 C.F.R. § 404.1520(c). (R. 13 at ¶ 3.). However, she found that such impairments did not render the Plaintiff disabled. (R. 14, ¶ 4.). The existence of a medical condition does not demonstrate a disability for purposes of the Act. Thus, the issue was not whether Plaintiff suffered from the stated medical conditions, but whether those conditions result in a functional disability that prevents Plaintiff from performing substantial gainful activity. *See Petition of Sullivan*, 904 F. 2d 826, 845 (3d Cir. 1990). As discussed above, we find, contrary to Plaintiff's argument, that the medical evidence supported the ALJ's finding that the Plaintiff was not disabled.

### i. Plaintiff's Credibility

In this case, the Plaintiff first claims that the ALJ did not properly consider his testimony concerning his limitations and his pain. (Doc. 9, pp. 7-8). The ALJ considered the Plaintiff's back conditions, his symptoms and the extent of his limitations, and she found that his testimony, with respect to his subjective complaints about the intensity, duration and limiting effects of his symptoms, was not entirely credible. (R. 16). The Plaintiff claims that this finding was erroneous. The Plaintiff states (Doc. 9, p. 7) that the ALJ improperly decided his credibility. Plaintiff disputes the ALJ's finding that, despite his complaints of pain for an extended period of time, none of the signs of chronic pain were evident in Plaintiff's case, and the ALJ's finding that he was not disabled as a result of pain. (R. 17).

Plaintiff (*Id*.) also finds error with the ALJ's following finding:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible.

(R. 16).

Plaintiff points out that none of his doctors ever questioned his credibility and that his medical records show that he has tried everything to get himself healthier, and nothing has worked. Plaintiff states that he has severe, daily pain and that the ALJ erred in finding that his testimony was not fully credible. (*Id*., p. 8).

We find substantial evidence to support the ALJ's finding that Plaintiff's testimony was not entirely credible as to his statements of limitations and symptoms. The ALJ details the basis for her credibility determination in her decision. (R. 16-17). The ALJ indicted that there was no evidence of nerve root compression, and that Plaintiff's EMG studies were both positive and negative for upper extremities radiculopathy. (R. 16). The ALJ found that Dr. Wolk's exams showed that Plaintiff had magnified his symptoms, and the doctor found evidence of manual labor by Plaintiff twice. The ALJ indicated that Plaintiff did not have any surgery since 1997, and that no new surgery was recommended. The ALJ found no evidence of gait disturbance or nerve problems in Plaintiff. The ALJ also stated that, at the time of the hearing, Plaintiff was only seeing Dr. Janerich every six months for treatment. (R. 16-17). The ALJ considered Plaintiff's headache symptom but found that his brain MRI was normal and that he took no prescribed medicine for it. (R. 17). The ALJ also considered Plaintiff's Daily Activity Questionnaire ("DAQ") form he completed

(R. 74-84, Ex. 3E, R. 17), which we find also supported her credibility determination.

We agree with Defendant that the ALJ considered both the medical records and Plaintiff's testimony. (Doc. 10, p. 11). We concur with the Defendant that the ALJ properly found that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but that Plaintiff's testimony regarding the intensity, length and limiting effects of his symptoms were not supported by the medical evidence, as discussed above, or by his statements, as discussed above.

The Defendant contends that the ALJ relied upon all of Plaintiff's symptoms, as well as the medical evidence and the other evidence in the record, as the basis for her credibility determination. We agree with the Defendant. (Doc. 10, pp. 11-12). The medical records, mentioned above, support the ALJ's finding that Plaintiff's statements regarding the intensity and limiting effects of his symptoms were not entirely credible. Plaintiff's medications and the acupuncture  treatments have helped with his  pain. As the ALJ stated, Plaintiff's gait was normal, and he did not use a cane or any device to ambulate.  (R. 16-17).  Plaintiff could drive a car, cook, clean and shop.  He was able to care for his own basic needs and for his two sons.  He does yard work and fishes.  (*Id*.).  Plaintiff testified that he used to go hunting but that he had not gone in a while and did not remember the last time he went.  (R. 367).

An ALJ must give weight to a claimant's subjective testimony of his  inability to perform even light or sedentary work, but only when the claimant's testimony is supported by competent medical evidence.  *Schaudeck v. Commissioner of Social Security*, 181 F. 3d 429, 433 (3d Cir. 1999). The ALJ found that the medical evidence presented supports a conclusion that Plaintiff has

pain in his back and neck, and that he has headaches and numbness in his left hand, but that the limitation from the symptoms was not of the extent alleged by the Plaintiff. (R. 16).   The ALJ found that the medical evidence, including the reports of Plaintiff's treating doctors, the objective medical tests, and Plaintiff's testimony, reveals that the Plaintiff had impairments that could cause his symptoms, but not to the extent of the limitations and intensity Plaintiff alleged.   Thus, the ALJ found that the Plaintiff was not fully credible regarding the severity of the symptoms he claimed. (*Id.*).   The record, as detailed above, substantiates this finding.

### ii.   The ALJ's RFC Finding That Plaintiff Could Perform A Reduced Range Of Medium  Work

As discussed, the ALJ found that the Plaintiff had physical impairments which, in combination, were severe, but that they were not severe enough to meet or equal any listed impairment.   The ALJ also found that the Plaintiff had the RFC to perform a reduced range of medium work. (R. 14).  Plaintiff argues that the ALJ erred in finding that he could perform medium work and that his RFC should have been found to be less than sedentary.  (Doc. 9, pp. 9-10). Plaintiff states that he was 41 at the ALJ hearing and stated that suffered from daily pain.  He argues that he testified that he could not do his hobbies of fishing and hunting, and that he could not reach overhead.   He states that the ALJ glossed over his depression.  (*Id.*, p. 10).   He states that his testimony, as discussed above, indicates a RFC of less than sedentary.

As noted above, the ALJ did properly consider Plaintiff's depression and found that it did not impose any limitations on Plaintiff since there were no records of psychological counseling or treatment other than medication, Lexapro.  The ALJ indicated that Plaintiff was not receiving any treatment or counseling  for depression at the time.  In his Brief, Plaintiff does not point out any

medical records of psychological treatment for his depression.  As Defendant points out, in August 2004, Dr. Janerich indicated that Plaintiff was feeling much better and tried  to stop the Lexapro. (R. 304).

In July 2004, a state agency doctor completed a RFC assessment and considered Plaintiff's physical impairments, and the doctor that Plaintiff could perform medium work. (R. 294-295).  Specifically, Plaintiff was found to be able to lift and carry 50 pounds occasionally and 25 pounds frequently.  He was found to able to sit about 6 hours and stand/walk for 6 hours.  He was found unlimited in his ability to push/pull.  (R. 295).  Plaintiff's gait was slow and antalgic but found to be magnified when compared to in the exam room and the parking lot.  His Waddell's Testing was grossly positive for non-organic physical findings.  (R. 295).  No postural limits were found, no manipulative limits were found, and no communicative limits were found.  (R. 296-298).

We agree with Defendant that the medical records and Plaintiff's statements as to his activities support the ALJ's RFC finding, and that this finding included the limitations which were supported by the record.  Plaintiff also argues that the ALJ erred by not giving full credibility to his testimony and by ignoring the medical evidence and opinions of his treating doctors, which indicated that he was disabled.

Upon review, we find that the ALJ stated the reasons in her decision with respect to her RFC finding, by discussing the medical evidence, both objective evidence and the reports of Plaintiff's treating doctors, and explaining her reasoning.  (R. 14-17).  It is clear that the Third Circuit requires the ALJ to identify the relevant listed impairments and to provide an explanation of reasoning for a finding that a claimant does not meet or equal a listed impairment.  *See Burnett*,

220 F. 3d at 120.  We find that the ALJ has fully explained her reasoning as to why the Plaintiff's physical impairments did not meet or equal any of the musculoskeletal listings, specifically listing 1.02, *et seq.,* and listing 11.00, *et seq.*  (R. 14).  The ALJ found that the Plaintiff did not meet the requirements of these listings.

As Defendant asserts (Doc. 10, pp. 13-14), the ALJ also discussed the Plaintiff's RFC as a result of his physical impairments, as required by 20 C.F.R. § 404.1527.  (R. 14-17).  The Plaintiff's degree of functional abilities, as a result of his physical impairments, was also discussed by the ALJ. (*Id.*).  Indeed, as the ALJ noted, Dr. Janerich's January 2002 Physical Capabilities Checklist indicated that Plaintiff could lift up to 25 pounds occasionally and that he could occasionally reach overhead, sit, stand, walk, stoop/squat, climb stairs (as Plaintiff testified he could on his front steps), crawl and drive.  (R. 15, 339).

Further, as Defendant argues (Doc. 10, p. 15), Dr. Wolk's May 2004 IME supported the ALJ's RFC finding.  We agree.  (R. 289-293).  As stated above, Dr Work found that Plaintiff could perform various jobs.  (R. 292).

### iii.    The ALJ's Consideration of Dr. Janerich's and Dr. Petterson's Opinions That Plaintiff Was Disabled

The Plaintiff contends that the ALJ erred in rejecting the opinions  of Dr. Janerich and Dr. Petterson.  Plaintiff claims that the ALJ incorrectly accepted Dr. Wolk's conclusions and Dr. Wolk's RFC findings.  (Doc. 9, p. 10).   Plaintiff states that Dr. Wolk only examined him for a short time and that his treating doctors should have been afforded more weight than Dr. Wolk.  Plaintiff points to Dr. Janerich's notes of March 2004 and May 2004, mentioned above, that he could not return to work.  (R. 309 & 355).  As stated, Plaintiff testified that Dr. Janerich did not lift his no

work restriction on Plaintiff at the time of the ALJ hearing.  Plaintiff also states, as we mentioned above, that Dr. Petterson also indicated that he could not work.  (*Id.*, p. 11).     Plaintiff also states that the ALJ improperly rejected the opinions of Dr. Janerich and Dr. Petterson,  his treating doctors, that his physical impairments precluded him from performing any work.  The Plaintiff states that the ALJ incorrectly relied upon Dr. Wolk's findings above Dr. Janerich's opinions.

Contrary to Plaintiff's claim, the ALJ amply discussed both Dr. Janerich's records and opinions, as well as Dr. Petterson's.  (R. 15-17).  The ALJ also comprehensively reviewed Plaintiff's objective medical tests and results.  As Defendant states, and the ALJ indicated (R. 17), Dr. Janerich simply wrote his notes that Plaintiff could not work on a prescription pad, without any explanation.  (Doc. 10, p. 6).  Further, as Defendant states (*Id.*) and the ALJ indicated (R. 17), Dr. Petterson's letter of February 16, 2006 (R. 358) contained no additional support.  Also, as Defendant indicates, while Dr. Petterson alluded to Plaintiff's fecal incontinence in his letter, there is no evidence that Plaintiff had this.  Rather, Plaintiff had urinary incontinence, but he indicated he had none in July 2003. (R. 254).

The treatment notes and findings of Dr. Janerich,  as well as his opinions  that Plaintiff was not able to work, have been discussed above.  The Plaintiff claims that, based on these records, including Dr. Janerich's opinions of March 2004 and May 2004, he cannot engage in substantial gainful activity for at least 12 months.   Under the Regulations, a plaintiff must establish that he is unable to engage in any substantial gainful activity by reason of a physical or mental impairment expected to result in death or last for a continuous period of at least twelve months. *See* 20 C.F.R. § 404.1505(a). The Defendant argues that the ALJ's RFC finding was proper based on her own

assessment of the record, despite the opinions of Plaintiff's doctors that he was unable work.

The Court in *Burnett*, 220 F. 3d at 121, stated that the ALJ must consider all evidence before her in making a RFC determination. The *Burnett* Court further stated that, while the ALJ is permitted to weigh the credibility of the evidence, she is required to give some indication of the evidence which she rejects, as well as the reasons for discounting the evidence. *Id*. Thus, the ALJ must mention and refute some of the contradictory medical evidence before her. *Id*. *See also Adorn v. Shalala*, 40 F. 3d 43, 48 (3d Cir. 1994). We find that, in this case, the ALJ considered all of the medical evidence before her, and she mentioned and refuted some of the contradictory evidence, such as Dr. Janerich's and Dr. Petterson's findings that Plaintiff was disabled. (R. 15-17). While the ALJ did not give controlling weight to Dr. Janerich's and Dr. Petterson's opinions that Plaintiff was disabled, she did give sufficient support in the record for her RFC findings. (R. 17). Indeed, the ALJ properly did not give full weight to Dr. Janerich's opinions that Plaintiff could not work since in March 2004. The ALJ also found that Plaintiff currently only went to Dr. Janerich every 6 months, and that the objective medical tests and clinical findings, discussed above, did not support the disabling condition which Dr. Janerich found. (R. 16-17).

The ALJ did, in fact, discuss Dr. Janerich's finding of disability (R. 16-17), but she (the ALJ) must decide the issue of disability under the Act.[6] Thus, the ALJ properly did not give Dr. Janerich's opinions controlling weight since she found them inconsistent with the evidence of record. (R. 17). The Court of Appeals for the Third Circuit set forth the standard for evaluating the

---

[6]It is the ALJ's determination, and not Dr. Janerich's, as to whether the Plaintiff is disabled. *Adorno. v. Shalala,* 40 F. 3d 43 (3d Cir. 1994).

opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310 (3rd Cir. 2000). The

Court stated:

> A cardinal principle guiding disability eligibility determinations is that the
> ALJ accord treating physicians' reports great weight, especially "when their
> opinions reflect expert judgment based on a continuing observation of the
> patient's condition over a prolonged period of time." *Plummer* [v. *Apfel*,
> 186 F.3d 422, 429 (3d Cir.1999)] (*quoting Rocco v. Heckler*, 826 F.2d
> 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d
> Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41
> (3d Cir.1989); *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988);
> *Brewster,* 786 F.2d at 585. Where, as here, the opinion of a treating
> physician conflicts with that of a non-treating, non-examining physician,
> the ALJ may choose whom to credit but "cannot reject evidence for no
> reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (*citing Mason
> v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the
> medical findings that support a treating physician's opinion that the
> claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the
> treating physician's assessment, an ALJ may not make "speculative
> inferences from medical reports" and may reject "a treating physician's
> opinion outright only on the basis of contradictory medical evidence" and
> not due to his or her own credibility judgments, speculation or lay opinion.
> *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d
> Cir.1988); *Kent*, 710 F.2d at 115.

*Id.* at 317-318.

As discussed, the ALJ found that the Plaintiff had physical impairments which, in

combination, were severe, but that they were not severe enough to meet or equal any listed

impairment. The ALJ also found that the Plaintiff did not have the RFC to perform his past work

as a machine operator, but that he did have the RFC to perform a reduced range of medium work.

The ALJ properly considered Dr. Janerich's and Dr. Petterson's opinions that Plaintiff was unable

to perform all work. The ALJ cited to ample records (R. 15-17) which indicated that Plaintiff had

the functional ability to perform work activities, including his admitted activities at home. We also

agree with the Defendant that, based on the above medical findings and Plaintiff's daily activities, he could perform medium work.[7]

The ALJ's finding, that Plaintiff was able to perform work, was not consistent with Dr. Janerich's disability determination. (R. 141, 187). However, as stated, the issue of disability determination is reserved to the Commissioner. 20 C.F.R. § 416.927(e)(3). The ALJ weighed the state agency diagnostic assessments, as well as the relevant, objective medical evidence, and concluded that Plaintiff was not completely disabled. *See Corly v. Barnhart*, 102 Fed. Appx. 752 (3d Cir. 2004); *see also Adorno v. Shalala*, 40 F. 3d 43, 47-48 (3d Cir. 1999) (holding that a statement by a treating physician deeming a plaintiff "disabled" or "unable to work" is not dispositive. An ALJ must review all the medical findings and other evidence and weigh it against the opinion of the treating physician).

## V.  Recommendation.

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal of the ALJ's April 7, 2006 decision be denied.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: May 9 2007**

---

[7]The Plaintiff's daily activities can provide evidence of his  symptoms and their effects on his  ability to work.  *See* 20 C.F.R. § 404.1529(c)(3)(i).  The ALJ (R. 17) properly considered the  Plaintiff's activities of daily living.

23

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK J. WASICKANIN, | : | CIVIL ACTION NO. **1:CV-06-1615** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **May 9, 2007**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *Defendant novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis

24

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: May 9, 2007**